The **PEOPLE** of the State of Colorado,
Plaintiff-Appellee,

v.

Phillip **COOPER**, Defendant-Appellant.

No. 84CA0249.

Colorado Court of Appeals,
Div. III.

Nov. 20, 1986.

Rehearing Denied Dec. 18, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Curt P. Kriksciun, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Gerald E. Piper, Sp. Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Phillip Cooper, appeals the judgments of conviction entered upon jury verdicts finding him guilty of first degree murder, first degree assault, and attempted aggravated robbery. He contends that the trial court erred when it denied his motions to suppress both evidence seized after a warrantless arrest and his statements to law enforcement officers. We affirm.

On December 30, 1982, three men attempted to rob a man and a woman outside a Denver restaurant. During the attempted robbery the woman was shot and killed and the man was injured. The police recovered a single .45 caliber casing at the crime scene and a bullet was later removed from the man's arm.

On the evening of January 5, 1983, two police detectives were dispatched to Robert Stinnett's residence with a warrant to arrest him for a parole violation. They also wanted to question him about a sexual assault which had occurred earlier, and to search his home for evidence of that offense. While the detectives waited for a search warrant, two unidentified men, each resembling Stinnett's description, exited Stinnett's home.

As they approached, the detectives drew their weapons, identified themselves as policemen, and commanded the men to "freeze." One of the men obeyed; the other took several steps backward, and dropped an object near a parked car.

Both men were detained to determine their identity. Each gave the detectives a false name, but the detectives quickly ascertained that one was Robert Stinnett and the other was defendant. The item that defendant dropped was retrieved and proved to be a .45 caliber handgun. A handgun was also found on Stinnett.

Both men were arrested and taken to police headquarters. Stinnett then made a statement implicating defendant as the person who had possessed a weapon during the December 30, 1982, robbery-murder.

Thereafter, defendant was given a *Miranda* advisement, signed a waiver of those rights, and was questioned for about one and one-half hours concerning the events of December 30. The detectives told defendant about Stinnett's statements implicating him. Defendant remained completely silent during the interrogation.

Approximately 20 minutes later, defendant was re-advised of his rights and signed another written waiver. During the questioning defendant was again told of Stinnett's statements. The detective also misinformed defendant that another witness had linked him with the incident. When the detective asked if the shooting had been an accident, the defendant said, "Yes," and then made a complete confession.

I.

Defendant first contends that his initial seizure was not a valid investigatory stop but was, instead, an unlawful arrest. Therefore, he argues, the trial court erred in denying his motion to suppress the handgun. We disagree.

An investigatory stop initiated on less than probable cause is permissible if it meets the following tests:

"(1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime;

(2) the purpose of the detention must be reasonable; and

(3) the character and scope of the detention must be reasonable when considered in light of the purpose." *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971)

The first requirement is met if there are specific and articulable facts known to the officer, coupled with rational inferences from those facts, which create a reasonable suspicion of criminal activity sufficient to justify the intrusion. *People v. Thomas*, 660 P.2d 1272 (Colo.1983). Only facts known prior to the intrusion may be used to evaluate the reasonableness of the officer's suspicion. *People v. Trujillo*, 710 P.2d 1169 (Colo.App.1985).

The officers had a warrant to arrest Stinnett and had been waiting for a search warrant prior to entering Stinnett's residence. Consequently, when two men exited Stinnett's home, and when each resembled Stinnett's description but was not positively identifiable at a distance in the darkness, it was reasonable for the detectives to stop both men to determine if either was Stinnett.

Defendant concedes that the purpose of the stop, to ascertain identity, was reasonable. Thus, the second requirement of *Stone, supra*, was met.

As to the last requirement, we agree with the trial court that the scope and character of the intrusion was reasonable in light of its purpose, and we reach that conclusion despite the fact that the stop was effectuated with guns drawn.

An investigatory stop may be effectuated with guns drawn if it is reasonable under the circumstances. *United States v. Jones*, 759 F.2d 633 (8th Cir.1985); *United States v. Perate*, 719 F.2d 706 (4th Cir. 1983); *United States v. Jacobs*, 715 F.2d 1343 (9th Cir.1983); *United States v. White*, 648 F.2d 29 (D.C.Cir.1981).

Under the circumstances facing the officers here, we conclude that they were justified in drawing their weapons. The detectives had a warrant to arrest Stinnett for a parole violation and also wanted to question him in connection with a sexual assault. Since the perpetrator of the sexual assault had wielded a shotgun and a handgun, they thought that Stinnett might be armed. The investigatory stop took place at night, under circumstances where the lighting was extremely poor. Therefore, it was reasonable for the detectives to insure their own safety by drawing their guns in stopping defendant and Stinnett.

After the detectives initiated the valid investigatory stop, the defendant dropped the handgun in the street. Because defendant abandoned the gun, he cannot now complain of its seizure by the detectives. *See People v. Morrison*, 196 Colo. 319, 583 P.2d 924 (1978); *People v. Mickens*, (Colo.App. No. 85CA0254, November 20, 1986). *See also* W. Erickson & W. Neighbors, *United States Supreme Court Cases and Comments*, § 1.11(5) (1985).

Consequently, since the seizure of the gun was not violative of any of defendant's constitutional rights, the trial court properly denied defendant's motion to suppress it.

II.

Defendant also contends that the trial court erred in denying his motion to suppress the statements he made to the police. He argues that the statements were involuntary because his silence during questioning was tantamount to an invocation of his right to terminate the interrogation. We disagree.

A defendant has the right to terminate questioning and reassert his Fifth Amendment rights at any time. *People v. Roark*, 643 P.2d 756 (Colo.1982). Once invoked, a defendant's right to cut off questioning must be scrupulously honored.

*Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Further, any declaration of a desire to terminate the contact or inquiry should suffice to achieve that result. 1 W. La-Fave & J. Israel, *Criminal Procedure* § 6.9(e) (1984). However, a defendant's silence, without more, is insufficient to require the police to discontinue questioning. *Taylor v. Riddle,* 563 F.2d 133 (4th Cir. 1977) *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978); *Howard v. Maggio,* 540 F.2d 1280 (5th Cir.1976); *State v. Perkins,* 219 Neb. 491, 364 N.W.2d 20 (1985).

■ Defendant's mere silence throughout a period of questioning that included two advisements of his rights and written waivers thereof gave the police no indication that he wished to cut off questioning. Consequently, the trial court correctly refused to suppress defendant's statement on this basis.

### III.

Defendant also argues that the trial court erred in refusing to suppress his statements because the officer's deception during questioning rendered the statements involuntary. Again, we disagree.

■ The determination whether a statement is voluntary must be based upon the totality of the circumstances, including the presence or absence of official misconduct. *People v. Smith,* 716 P.2d 1115 (Colo.1986); *People v. Raffaelli,* 647 P.2d 230 (Colo. 1982). On review, we are bound by the trial court's factual findings when they are supported by adequate evidence in the record, and we will not lightly disturb the court's findings with respect to the voluntariness of a defendant's statements. *People v. Freeman,* 668 P.2d 1371 (Colo.1983).

■ We recognize that the officers' false representation regarding the extent of their knowledge and evidence of defendant's participation in the attempted robbery and murder was improper. *People v. Free-*

*man, supra.* However, a single impropriety of this kind does not render a confession involuntary. *See People v. Freeman, supra.* The record reveals no other aspects of the interrogation which would render it improper. Consequently, the totality of the circumstances supports the trial court's finding that defendant's confession was voluntary.

Judgment affirmed.

VAN CISE and BABCOCK, JJ., concur.