Charles Alvin PERRY, Appellant,

v.

The STATE of Texas, State.

No. 2–92–419–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 3, 1993.

Kimberly K. Kaufman, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Steven W. Conder, Asst. Criminal Dist. Atty., Fort Worth, for appellee.

Before LATTIMORE, HICKS and FARRAR, JJ.

OPINION

HICKS, Justice.

Appellant was convicted by a jury for the offense of possession of cocaine in an amount less than twenty-eight grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 1992). He pleaded "true" to two enhancement counts, and the trial judge assessed punishment at fifty years confinement. In two points of error, appellant contends that the court improperly sustained a challenge for cause made by the State, and that the evidence is insufficient to support his conviction. We affirm.

In his first point of error, appellant argues that the court erred by sustaining a challenge for cause the State made against prospective juror Margaret McCoy. During the State's voir dire, McCoy stated that she had "a run-in with officers," but that she preferred not to talk about it publicly. When McCoy was later questioned outside the presence of the jury panel, the following occurred:

[PROSECUTOR]: Okay. Ma'am, we noticed on your form that you had been arrested.

PROSPECTIVE JUROR: I was arrested in May of this year with a woman officer. She stuck a gun in my face. And I was not guilty but I was—I had to plead guilty. The person that I was with that was stealing a car got off free. So I do not believe in attorneys any more or the judicial system.

[PROSECUTOR]: Okay.

PROSPECTIVE JUROR: Because it did not work for me.

[PROSECUTOR]: Okay. Obviously, I can see that you have ill will towards the system.

PROSPECTIVE JUROR: Exactly.

[PROSECUTOR]: Would that create a—a hardship for you serving on this jury?

PROSPECTIVE JUROR: A little bit.

[PROSECUTOR]: Would that sway you to one side or the other while you're listening—

PROSPECTIVE JUROR: Not really, no. I've been on a jury panel before. And I'm very strong willed and I have my own opinion.

[PROSECUTOR]: Would you be able to judge the credibility of—of police officers or would that be tainted by what's happened?

PROSPECTIVE JUROR: Well, it was brought out that there are some good officers and some bad.

[PROSECUTOR]: Was that a Fort Worth officer that arrested you?

PROSPECTIVE JUROR: Yes.

[PROSECUTOR]: It was a woman?

PROSPECTIVE JUROR: Yes.

[PROSECUTOR]: Well, would you just be able to have an open mind as you sit here?

PROSPECTIVE JUROR: I would really try to, but this is, like, back in May. I mean, this is real fresh. I mean, I was in court across the hall.

[PROSECUTOR]: Again, obviously, if you were in the State's position, you'd probably be concerned—we're concerned when we hear someone has had such a bad experience with a police officer. I know you're saying that you would try, but I really need to know if you—

PROSPECTIVE JUROR: That's all I can do is just try, you know. But it just depends on what the officers say. You know, it depends on the evidence, what they say.

Further, McCoy stated that after her arrest, her attorney pressured her into pleading guilty to the offense of criminal trespass even though she was not guilty. When asked by appellant's counsel if this experience made her "harbor any ill will to other lawyers," McCoy said, "I just don't believe in the profession of attorneys. I just think they're kind of prostitutes is what they are." McCoy also stated that she felt this way about most attorneys, and that therefore she would dislike the prosecutors and defense attorneys equally. In evaluating appellant's guilt or innocence, McCoy said she would not hold her own personal experience against either side.

The code of criminal procedure provides that the State may challenge for cause a venireperson who has a bias or prejudice in favor of the defendant, or some phase of the law upon which the State is entitled to rely for conviction or punishment. TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(9), (b)(3) (Vernon 1989 & Supp.1993). When making its objection, the State cited the wrong provision of the code of criminal procedure and stated that McCoy was "unable to follow the law," and had "[b]ias and prejudice against any of the law applicable to the case." Although technically this may not have been the best objection to make, the reasons for the objections were sufficiently clear.

 The trial court's decision on whether to sustain a challenge for cause is accorded great deference. *Mooney v. State,* 817 S.W.2d 693, 701 (Tex.Crim.App.1991). When the evidence is conflicting, a trial court has discretion to find, or to refuse to find, facts such as would justify a challenge to a venireman for cause. *Hammond v. State,* 799 S.W.2d 741, 744–45 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1076 (1991); *see Vuong v. State,* 830 S.W.2d 929, 943 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). Given McCoy's statements about police officers and attorneys, which seem to indicate a slant in favor of appellant, we cannot say that the trial court abused its discretion by sustaining the State's challenge for cause. Point one is overruled.

In point two, appellant challenges the sufficiency of the evidence to support his conviction. Specifically, he argues that there is insufficient evidence that he possessed the cocaine. The penal code defines "possession" as actual care, custody, control, or management. Tex.Penal Code Ann. § 1.07(a)(28) (Vernon 1974). In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Little v. State,* 758 S.W.2d 551, 562 (Tex.Crim.App.), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988).

Fort Worth Police Officer D.B. Briggs testified that he had been patrolling the area encompassing the 1300 block of New York Avenue for two years. In that time, he had been involved in about 100 arrests involving illegal drugs. Seventy-five to eighty percent of these arrests involved heroin or cocaine. And about half of these 100 arrests came from the house at 1303 New York Avenue. Briggs knew this house to be a "drug house"—one that is usually unoccupied, has no utilities, and has a great deal of traffic coming to and from it. Transactions often take place through a window in order to conceal and protect the people inside.

In the early evening of January 30, 1992, Briggs was investigating drug activity in the 1300 block of New York Avenue. He was driving an unmarked vehicle and his uniform was concealed with a flannel shirt. With a police radio, he was able to communicate with two other officers who were in the area in two separate marked patrol cars. Briggs saw a vehicle pull up to a point he knew as a drop-off point for people who buy drugs at 1303 New York Avenue. The passenger, identified by Briggs as appellant, got out of the car and walked up to a window on the side of the house at 1303 New York Avenue. Appellant knocked on the window, extended his right hand into the window, withdrew a clinched fist a few seconds later, and walked away. Briggs radioed to the other officers that appellant was at the end of the driveway.

The only other witness to testify at trial was Officer Keith McGuire, who was one of the officers in radio contact with Briggs. He was parked nearby in a marked patrol car. McGuire testified that Briggs contacted him over the radio and told him that a man had just purchased drugs and was walking away on Magnolia Street. Briggs gave McGuire a description of the suspect's clothing.

McGuire drove to Magnolia Street where he caught up with appellant. McGuire rolled down the car window and said something to appellant, but appellant kept on walking. When McGuire opened his car door and started to get out, appellant began to run. McGuire ran after him, about ten or fifteen feet behind, and noticed that appellant had his left hand closed. When appellant got to the sidewalk, he made a little tossing motion. McGuire saw a white object fall from appellant's hand and hit the sidewalk.

The object rolled to the edge of the grass and McGuire lost sight of it for a second. He stopped where it hit the sidewalk and had to look around for a second to find it. Although there was a lot of trash in the area, he did not have to move or uncover anything to get to it. On cross-examination, McGuire stated that it was possible that appellant threw something other than the capsule to the ground. While McGuire was recovering the capsule, Briggs and a third officer apprehended appellant. The parties stipulated that John Harris, an expert in the field of analyzing suspected controlled substances, tested the white object recovered by police and found that it contained cocaine.

We hold that there was sufficient evidence from which the jury could find appellant committed the offense of possession of a controlled substance. *See Blackmon v. State,* 830 S.W.2d 711, 713–14 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Ross v. State,* 797 S.W.2d 334, 335 (Tex.App.—Texarkana 1990, no pet.). Officer Briggs observed appellant at a known drug house, taking actions known by him to be the standard procedure for purchasing drugs at that house. The evidence that appellant ran when Officer McGuire approached him is a

circumstance from which an inference of guilt may be drawn. *See Foster v. State,* 779 S.W.2d 845, 859 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 639 (1990); *Vera v. State,* 499 S.W.2d 168, 171 (Tex.Crim.App.1973). McGuire saw appellant throw a white capsule to the ground. Although McGuire lost sight of the capsule for a second, he recovered it immediately. The officer stated that beyond a reasonable doubt the item appellant tossed away was not some of the debris. The fact that McGuire testified that it was *possible* appellant dropped something other than the capsule of cocaine into the grass does not make the evidence insufficient as a matter of law. Appellant's second point of error is overruled.

The judgment is affirmed.